*UNITED STATES DISTRICT COURT*
*FOR THE DISTRICT OF COLUMBIA*

| | |
|---|---|
| **HAKAN LANS,**          )<br>                              )<br>          Plaintiff,      )<br>                              )<br>          v.              )<br>                              )<br>**GATEWAY 2000, INC.,**  )<br>**DELL COMPUTER CORP.**  )<br>                              )<br>          Defendant.     )<br>_____) | Civil Action No. 97-2523 (JGP)<br>Civil Action No. 97-2526 (JGP) |
| **UNIBOARD AKTIEBOLAG**  )<br>                              )<br>          Plaintiff,      )<br>                              )<br>          v.              )<br>                              )<br>**ACER AMERICA CORP. et al.** )<br>                              )<br>          Defendants.    )<br>_____) | Civil Action No. 99-3153 (JGP) |

**MEMORANDUM OPINION**

This matter comes before the court pursuant to **Gateway 2000, Inc.'s Renewal of Gateway's Motion That Counsel Be Held Jointly & Severally Liable** [#s 144, 135],[1] and **Dell Computer Corp.'s Request to Modify Award to Hold Counsel Jointly and Severally Liable** [#s 102, 131].[2]  Gateway 2000, Inc. ("Gateway") and Dell Computer Corp. ("Dell") request that the Court hold Adduci, Mastriani, & Schaumberg, L.L.P. ("AMS") jointly and severally liable for

---

[1] Filing numbers for Gateway's motion correspond to Civil Action No. 97-2523 and 99-3153 respectively.

[2] Filing numbers for Dell's motion correspond to Civil Action No. 97-2526 and 99-3153 respectively.

attorney's fees and costs pursuant to 28 U.S.C. § 1927 and the Court's inherent power.[3]  Upon consideration of the motions, opposition, and the entire record herein, the Court concludes that Gateway and Dell's motions to hold AMS jointly and severally liable should be denied.

## BACKGROUND

On October 24, 1997, Hakan Lans ("Lans"),[4] through his attorneys AMS, filed a patent infringement suit, in his own name, against various computer companies, including Gateway 2000 Inc. ("Gateway") and Dell Computer Corp. ("Dell").[5]  See Compl.  During the discovery process, Gateway found that on October 19, 1989, Lans had assigned and transferred his 986

---

[3]The Court is considering Gateway and Dell's motions together because of the similarity of claims, and because of Gateway's joinder in Dell's Post-hearing Brief.  See Gateway's Joinder In Dell's Post Hr'g Br.

[4]Hakan Lans was issued his United States Patent No. 4,303,986 ("986 patent") on December 1, 1981.  Compl. at ¶ 7.  The 986 patent accelerates the performance of color graphics subsystems in contemporary computers.  Id.

[5]Collectively referred to as the Lans cases, these related matters are Lans v. Gateway 2000, Inc., No. 97-2523 (D.D.C. filed Oct. 24, 1997), Lans v. Dell Computer Corp., No. 97-2526 (D.D.C. filed Oct. 24, 1997), Lans v. Acer America Corp., No. 97-2528 (D.D.C. filed Oct. 24, 1997), and Lans v. AST Research, Inc., No. 97-2529 (D.D.C. filed Oct. 24, 1997).  Four other related matters, Lans v. Digital Equipment Corp., No. 97-2493 (D.D.C. filed Oct. 24, 1997), Lans v. Hewlett-Packard Co., No. 97-2524 (D.D.C. filed Oct. 24, 1997), Lans v. Packard Bell NEC, Inc., No. 97-2525 (D.D.C. filed Oct. 24, 1997), and Lans v. Compaq Computer Corp., No. 97-2527 (D.D.C. filed Oct. 24, 1997), were dismissed pursuant to stipulations of dismissal entered into between the parties.  Two other related matters, Lans v. Olsy North America, No. 97-2530 (D.D.C. filed Oct. 24, 1997), and Lans v. Siemens Nixdorf Info., No. 98-0050 (D.D.C. filed Jan. 9, 1998), had been previously dismissed. Defendants Compaq Computer Corp., Hewlett-Packard Co. and Packard Bell NEC have withdrawn their motions for attorneys fees in Uniboard pursuant to stipulations of dismissal filed by the parties.  Defendant Digital Equipment Corp., which joined Compaq Computer Corp.'s motion for attorneys fees, also withdrew its motion for attorneys fees pursuant to a stipulation of dismissal filed by the parties.

patent to Uniboard Aktiebolag ("Uniboard"), a company wholly owned by Lans.[6]  Gateway subsequently filed a motion for summary judgment arguing that Lans was not the registered owner of the patent, and thus lacked standing to sue.  See Gateway's Mot. Summ. J.

In response to Gateway's summary judgment motion, AMS filed a series of motions on behalf of Lans, and a new complaint in the name of Uniboard.[7]  The Court denied the motions and dismissed the Uniboard complaint.[8]  AMS went on to appeal these orders which were all consolidated and affirmed by the Federal Circuit.  See Lans v. Digital Equipment Corp., 252 F.3d 1320 (Fed. Cir. 2001).  While the appeals were pending, however, the computer companies filed various motions for attorneys fees against Lans, Uniboard, and AMS under 35 U.S.C. § 285 and 28 U.S.C. § 1927.  In it's September 6, 2001 order, the Court granted the motions for attorneys fees against Lans and Uniboard, and denied the motion with respect to AMS.

The Court's basis for granting the computer companies' motions for attorneys fees against Lans and Uniboard stemmed from Lans' behavior during the litigation process.  The Court found that Lans' failure to sue in the name of the proper party was not "an honest and understandable

---

[6] On October 19, 1989, Lans entered into an agreement with International Business Machines Corporation (IBM) for the licensing of his 986 patent.  In order to avoid heavy taxation by the Swedish government, Lans decided to license the patent through his company, Uniboard.  He therefore assigned all of his rights in the 986 patent to Uniboard, and signed the IBM licensing agreement on behalf of Uniboard.  Both of these transactions occurred on October 19, 1989.  See Lans 1/26/05 Dep. Tr. at 75-77; Intervenor's Mem., Ex.17.

[7] AMS represented Uniboard in the filing of the new complaint.  AMS also filed a motion to amend the original complaint to substitute Uniboard as the plaintiff, and a Federal Rule of Civil Procedure 60(b)(2) motion seeking reconsideration based on newly discovered evidence.

[8] The Court found that the patent had already expired, and that Uniboard failed to give notice pursuant to 35 U.S.C. § 287(a).  See Uniboard Aktiebolag v. Acer Am. Corp, 118 F.Supp.2d 19 (D.D.C. 2000).

mistake," and that he should have been more "thorough with his record keeping and more forthcoming with his attorneys." See Sept. 6, 2001 Mem. Op. at 9, 11.  The Court also found that Uniboard "knew or should have known by reasonable investigation that its suit was groundless." Id. at 17.  However, the Court did not hold AMS liable stating that although the Court was concerned with AMS' conduct in failing to properly investigate ownership of the patent prior to filing the Lans cases, there was no evidence that AMS engaged in "vexatious and unreasonable conduct."  Id. at 14.

On January 14, 2002 , Lans and Uniboard, represented by new counsel, filed a motion for reconsideration of the Court's September 6, 2001 order.[9]  They alleged that they were not properly represented on the motions for attorneys fees because AMS failed to conduct proper research as to the ownership of the patent.  See Mot. for Recons. of the 9/6/01 Order.  They also claimed that AMS knew that the patent had previously been assigned to Uniboard, but failed to file in the name of the proper party in order to protect their own financial interests.  Id.  Gateway and Dell ("Computer Companies") subsequently filed motions to hold AMS jointly and severally liable contending that in light of new evidence proving that AMS knew about the Uniboard transfer prior to filing suit, the Court should modify it's September 6, 2001 order to hold AMS jointly and severally liable.  See Gateway's Renewal of Gateway's Mot. That Counsel Be Held Jointly & Severally Liable ("Gateway's Mot."); Dell 's  Req. to Modify Award to Hold Counsel Jointly & Severally Liable ("Dell's Mot.").

---

[9] The Court issued an order denying Lans and Uniboard's Motion for Reconsideration of the September 6, 2001 Order on June 23, 2005.

**ANALYSIS**

I. *Standard of Review*

28 U.S.C. § 1927 provides that "any attorney...who so multiplies the proceedings... unreasonably and vexatiously may be required by the Court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct." In order to be sanctionable under section 1927, an attorney's behavior "must be at least 'reckless.'" U.S. v. Wallace, 296 U.S.App.D.C. 93, 96-100, 964 F.2d 1214, 1217 (1992). "'Unintended, inadvertent, and negligent acts will not support an imposition of sanctions under section 1927'...there must be a 'conscious choice of a course of action, either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man.'" Naegele v. Albers, 355 F.Supp.2d 129, 145 (D.D.C. 2005), quoting Wallace, 296 U.S.App.D.C. at 98-99, 964 F.2d at 1219-20. Therefore, recklessness is a high threshold. Id.

The standard which would permit a Court to invoke it's inherent judicial authority to levy attorney's fees is even more stringent than the standard for section 1927. There must be proof that the party litigated "in bad faith, vexatiously, wantonly, or for oppressive reasons." Kerner v. Cult Awareness Network, Washington, D.C., 843 F.Supp. 748 (D.D.C. 1994), quoting Nepera Chemical, Inc. v. Sea-Land Service, 253 U.S.App.D.C. 394, 408, 794 F.2d 688, 702, (1986).

II. *Computer Companies' Claims*

The Computer Companies argue that AMS should be held liable for attorneys fees because they knew about the assignment of the 986 patent nine months prior to filing the complaint. See Gateway's Memo at 8; Dell's Memo at 5. To support their assertion, the Computer Companies reference AMS' representation of Uniboard in a dispute that arose in January 1997 regarding the

scope of the licensing agreement between Uniboard and IBM.[10]  Id.  They argue that because AMS represented Uniboard with respect to that dispute, AMS had to know about the assignment; IBM would not pay over one million dollars for a license from Uniboard if Uniboard did not have an ownership interest in the patent.[11]  Id. ; See Gateway's Reply in Support Motion ("Gateway's Reply Br.") at 4.  AMS contends that although they represented Uniboard with respect to the IBM Agreement, they had no reason to suspect that Uniboard owned the complete rights to the patent; especially since Lans repeatedly told them that he was the registered owner.  Intervenor's Mem. at 29.  Moreover, there is nothing on the face of the IBM Agreement that would indicate that Uniboard had more than the power to grant the license.  See Intervenor's Mem., Ex. 1 (Mastriani Aff.), Ex. 17 (IBM Agreement).

    The Computer Companies claim that even if AMS was unaware of the assignment, there were various red flags throughout AMS' representation of Lans that should have caused AMS to further investigate ownership of the patent prior to filing the complaints.  One such occurrence was a February 19, 1997 fax from Lans to AMS attorney Louis Mastriani ("Mastriani"), where Lans states,

> as you know the license has been signed with a company (UNIBOARD AB) and not with me as an individual (the patent has been transferred to the company for many years ago and the agreement with IBM was made with UNIBOARD AB)...In order to make this clear I have signed a paper for changing registration at the U.S. Patent office. Dr. Bertil Grennberg will send you this document.  Mot. For Recons., Ex. 9.

---

[10] In April 1997, AMS received Lans' consent to represent Uniboard in negotiations over Uniboard's rights under the IBM Agreement.  See Intervenor's Opp. To Mot. For Recons., Ex. 27, 28.

[11] The licensing agreement between Uniboard and IBM was worth at least $1,500,000.00 in 1989.  See Intervenor's Mem., Ex. 17 (IBM Agreement).

Mastriani contends that when he questioned Lans about the e-mail, Lans told him that Uniboard had the right to receive revenues from the patent.[12]  See Mastriani Aff. at ¶ 15.  Mastriani asserts that when he asked Lans to clarify what he meant when he wrote that he had "signed a paper for changing registration," Lans was unclear.  Id. at ¶ 16.  Mastriani claims that he consequently contacted Dr. Bertil Greenberg, one of Lans' former attorneys, who told Mastriani that he was unaware of any such document changing registration.  Id.

The Computer Companies allege that another red flag was a January 1999 e-mail from Lans to AMS in response to interrogatory responses that were drafted by AMS.  In the e-mail, Lans suggests changing a draft interrogatory response from "I am the sole owner of the 986 patent" to "the company Uniboard is the owner of the 986 patent rights but the patent is still registered in Mr. Hakan Lans name." The Computer Companies argue that this e-mail should have alerted AMS that there was a problem with respect to ownership of the patent.  See Gateway's Reply Br. at 5.  AMS asserts that upon receipt of this e-mail, Mastriani contacted Lans, and Lans again confirmed that he was the sole owner of the patent and that Uniboard had no ownership rights.  See Mastriani Aff. ¶ 19.

The Computer Companies' final contention concerns the existence of two licensing agreements that purported to give both Lans and Uniboard ownership of the 986 patent at the same time.  See Dell's Post-Hearing Br. at 6-7.  These agreements are the IBM agreement that

---

[12]Lans sent AMS this fax after receiving service of process in a suit filed in Idaho by Micron Electronics.  See Mastriani Aff. ¶ 15; 3/24/05 Tr. at 113-114.  Lans was concerned about the fact that he was the named defendant in the case and wanted to know whether Uniboard could be substituted as the defendant.  Id.  Lans wanted to substitute Uniboard as the defendant so that he could protect his family's financial interests.  Id.

was signed by Lans on behalf of Uniboard in October 1989, and the Hitachi Ltd. agreement that was signed by Lans as owner of the 986 patent in January 1995.[13]  Id.  Since the releases on such agreements only encompass acts of infringement during the previous six years, the IBM agreement would have released claims going back to October 1983 and the Hitachi Agreement would have released claims going back to January 1989.  Id.  The Computer Companies argue that the two agreements read together indicate that two different owners of the 986 patent were releasing claims owned solely by each for time periods that overlapped.  Id.  They claim that this is an obvious incongruity under U.S. patent law, and should have caused AMS to conduct further investigation into the ownership of the patent.  Id.  However, AMS contends that there was never any reason to be concerned that there was a problem with the spacing between the IBM and Hitachi licenses because there was no such problem as a matter of black letter patent law.  See Posthearing Br. of Intervenors at 17.  AMS contends that ownership of a patent is not required in order to grant a release of liability for past infringement.  Id.  Moreover, Lans represented that he and Uniboard were essentially one entity, and thus there was no reason for AMS to be suspicious of the licenses.  Id.

III. *Reasonableness of AMS' Conduct*

Among the factors that the Court may consider in determining whether a reasonable pre-filing inquiry was made include "a determination and evaluation of the source of facts relied upon by counsel."  Barber v. American Security Bank, No. 86-1156, 1989 WL 7339, at * 3 (D.D.C. Jan. 18, 1989).  AMS claims that prior to filing suit against the Computer Companies, they reviewed

---

[13] Lans was represented by separate counsel, Dr.Bertil Grennberg, when he entered into the Hitachi licensing agreement.  The agreement was part of a settlement between Lans and Hitachi.

all available documentation concerning ownership of the 986 patent. See Intervenor's Mem. at 8, Ex. 2, 10-11, 14; Mastriani Aff. ¶¶ 4-7. They also claim to have checked the United States Patent and Trademark Office and foreign patent office registries, as well as commercial data bases. Id. Moreover, AMS' client, Lans, repeatedly indicated that he was the registered owner of the patent. See Intervenor's Mem., Ex. 4, 33, 35, 39, 40, 42-44; Prehearing Br. of Intervenors, Ex. 3-5. Lans not only authorized AMS to send infringement letters naming himself as the owner of the patent, but during an evidentiary hearing held on March 24, 2005, Lans admitted that he did not tell AMS that he had signed an agreement transferring his ownership rights. See Intervenor's Mem., Ex. 23; 3/24/05 Evidentiary Hr'g Tr. at 62.

Sanctions under section 1927 require more than negligent oversight. The moving party must show that counsel acted recklessly or deliberately "in the face of a known risk." Naegele v. Albers, 355 F.Supp.2d 129, 145 (D.D.C. 2005) quoting Healey v. Labgold, 231 F.Supp.2d 64, 68 (D.D.C. 2002) (citing Wallace, 296 U.S.App.D.C. at 98, 964 F.2d at 1219 ). While AMS' failure to uncover the 1989 assignment of the 986 patent may have been negligent, there is no indication that AMS engaged in vexatious and unreasonable conduct sufficient to warrant sanctions under section 1927. And since there is no evidence of bad faith, AMS cannot be sanctioned under the Court's inherent power.[14]

---

[14] The Computer Companies reference a financing agreement between AMS and a group of investors, procured for the financing of the 986 patent litigation, as an indication of bad faith. See Gateway's Reply Br. at 6. However, the Court does not find the mere act of entering into a financing agreement to finance litigation as evidence of bad faith; especially since Lans expressly declared that he did not want to pay out of pocket for litigation expenses. See Intervenor's Mem., Ex. 8.; 1/26/05 Lans Dep. Tr. at 37.

**CONCLUSION**

For the foregoing reasons, Gateway 2000, Inc.'s Renewal of Gateway's Motion That Counsel Be Held Jointly & Severally Liable and Dell Computer Corp.'s Request to Modify Award to Hold Counsel Jointly and Severally Liable are both DENIED.  An appropriate order accompanies this Memorandum Opinion.


**Date: August 10, 2005**                              **JOHN GARRETT PENN**
                                                       **United States District Judge**